IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| CARIBBEAN PETROLEUM CORPORATION | CASE NO. 10-12553 KG |
| CARIBBEAN PETROLEUM REFINING LP | (Bankruptcy Court District of Delaware) |
| Debtor(s) | |
| PORFIRIA CRUZ MARTINEZ | MISC. CASE 10-00001 BKT |
| MONICA MALDONADO GONZALEZ | MISC. CASE 10-00002 BKT |
| LYMARIS ORTIZ ERAZO | MISC. CASE 10-00003 BKT |
| ANGEL LUIS GARCIA ORTIZ | MISC. CASE 10-00004 BKT |
| VICTOR M REYES ORTIZ | MISC. CASE 10-00005 BKT |
| DAVID SALABERRY HERNANDEZ | MISC. CASE 10-00006 BKT |
| MERCEDES RODRIGUEZ RODRIGUEZ ET AL | MISC. CASE 10-00007 BKT |
| ANTONIA RIVERA CASIANO | MISC. CASE 10-00008 BKT |
| Plaintiffs | |
| CARIBBEAN PETROLEUM CORPORATION; | FILED & ENTERED ON 12/23/2010 |
| CARIBBEAN PETROLEUM REFINING LP; | |
| ET ALS | |
| Defendant(s) | |

## OPINION AND ORDER

## I.    BACKGROUND

Before this Court is BP Products North America Inc. [hereinafter "BP"] Notice of Removal filed on September 13, 2010, pursuant to 28 U.S.C. § 1452(a), and Chartis Insurance Company – Puerto Rico [hereinafter "CHARTIS"] Motion for Remand and Memorandum Thereof filed on October 13, 2010, pursuant to 28 U.S.C. § 1452(b). Additional motions were filed on this matter namely, BP's Memorandum of Law Opposing Chartis' Motion for Remand filed on November 24, 2010, and Chartis' Reply to such Memorandum filed on December 16, 2010. On September 13, 2010, eight Notices of Removal were filed before this bankruptcy court, each in reference to civil actions filed and currently pending before the Puerto Rico court of First Instance, Bayamon Part,

against, among other parties, Caribbean Petroleum Corporation (hereinafter "CAPECO"). The Notices of Removal, which were accepted as filed under Miscellaneous Proceedings 10-01 through 10-08, were filed by co-defendant BP.  CAPECO, Caribbean Petroleum Refining L.P. [hereinafter "CPR"] and Gulf Petroleum Refining Corporation filed bankruptcy petitions under Chapter 11 before the U.S. Bankruptcy Court for the District of Delaware, the consolidated cases are jointly administered as Case No. 10-12553-KG.

The civil actions [hereinafter "Commonwealth Court Action"] which BP seeks to remove were filed on November 6, 2009, as a result of an explosion at CAPECO's facilities in Bayamon, Puerto Rico on October 23, 2009, during fuel offloading operations.  Several fuel storage tanks, containing gasoline, diesel and petroleum products and derivatives, exploded, burned or were damaged, causing a fire that created a smoke plume allegedly containing hazardous contaminants. As a result of this incident, and before the filing of the bankruptcy case in the District of Delaware, the plaintiffs brought suit against CAPECO and others, including BP, jointly and severally, on multiple claims based on allegations that are inextricably interwoven, present common questions of law and fact and are best resolved in one proceeding, according to BP's motion. The plaintiffs are seeking recovery of millions of dollars in compensation for the alleged negligence of defendants. The commencement of CAPECO's bankruptcy case on August 12, 2010, stayed the Commonwealth Court Action pursuant to Section 362 of the Bankruptcy Code as to all parties, pending the Delaware Bankruptcy Court's decision on whether the stay applied to non-debtor parties.

In its Notice of Removal BP argues that the district court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) which provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases

under title 11." BP argues that this is a core proceeding, or that in the alternative the lawsuit is undoubtedly "related" to the CAPECO Bankruptcy Case. BP further states, that to the extent the lawsuit is determined to be non-core, they will consider consent to the entry of final orders or judgment by the bankruptcy judge.

In its opposition, CHARTIS argues that the court should remand and abstain from hearing the Commonwealth Court Action. Even if the Court were to determine that subject matter jurisdiction exists, the lawsuit is subject to mandatory abstention under 28 U.S.C. § 1334 (c)(2) because the basis of the suit rests solely on Commonwealth law, and it would not have been brought in federal court absent the bankruptcy case.   Such matters, CHARTIS states, are clearly better suited for determination by the Commonwealth Courts. In the alternative, this Court should exercise its discretion and abstain from hearing this action pursuant to 28 U.S.C. § 1334(c)(1) and should equitably remand this case to State court pursuant to 28 U.S.C. § 1452(b).

## II. JURISDICTION

Because we find that a determination of the Court's jurisdiction will frame the adjudication of the issue pending before us, we address the jurisdictional question first and foremost. The jurisdiction of the bankruptcy court, like that of any other federal court, is limited by statute. Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or 'related to' cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or 'related to' a case under title 11…to the bankruptcy judges for the district."  At its essence, bankruptcy court jurisdiction exists in cases "under" the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* and those cases "arising under," "arising in," and "related to" Title 11. 28 U.S.C. § 1334(b); 28 U.S.C. §

157(a). These types of proceedings are further delineated as "core" or "non-core." Because of the constitutional limits imposed upon bankruptcy court jurisdiction, distinguishing between core and non-core proceedings is vital to the exercise of jurisdiction by a bankruptcy court. A bankruptcy court may hear and finally determine all core bankruptcy proceedings; the parties' agreement is not needed. 28 U.S.C. § 157(b).

**A. "Related to"**

Bankruptcy courts may exercise subject matter jurisdiction over core claims that "arise under" or "arise in" a bankruptcy case. A bankruptcy court will also have subject matter jurisdiction over those non-core proceedings that "relate to" a bankruptcy case. In re Middlesex Power Equipment & Marine Inc., 292 F.3d 61, 68 (1st Cir. 2002). A civil proceeding is "related to" a bankruptcy case, for jurisdictional purposes, when the action between the parties affects how much property is available for distribution to creditors of the bankruptcy estate or allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities. Id. at 68 (quoting In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991)). "Related to" jurisdiction is limited, and bankruptcy courts lack jurisdiction over matters which will have no effect upon the debtor's estate. By its very definition, "related-to" jurisdiction only applies in non-core matters as an alternative basis of jurisdiction. It assumes that the matter does not 'arise in' the case at hand and therefore it requires some other nexus vis-a-vis the estate involved. "Related to" jurisdiction is the most expansive component of bankruptcy jurisdiction, see 28 U.S.C. § 1334(b), but it is not boundless. See, e.g., Arnold Print Works v. Apkin, 815 F.2d 165, 167 (1st Cir.1987) (abstention from hearing non-core "related to" matters is permissive and sometimes mandatory). Whether the claims are sufficiently "related to" a bankruptcy case is a question of whether they are "sufficiently connected" to the debtor's

reorganization.

The Third Circuit has established a much-cited standard for determining whether a proceeding is "related." In Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984), the Court described the test as whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." The First Circuit has recognized this standard. See In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991). In addition, numerous First Circuit district and bankruptcy courts have accepted and applied this test. See, e.g., In re Santa Clara County Child Care Consortium, 223 B.R. 40, 45 (B.A.P. 1st Cir. 1998) (providing a lengthy list of First Circuit district and bankruptcy courts adopting the Pacor test); In re Remington Dev. Group, Inc., 180 B.R. 365, 368 (Bankr. D.R.I. 1995). "The usual articulation of the test for determining whether a civil proceeding is 'related to' bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d at 994, overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995). See also, In re G.S.F. Corp., 938 F.2d at 1475 (quoting Pacor). "An action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Pacor, Inc., 743 F.2d at 994. Accord In re G.S.F. Corp., 938 F.2d at 1475; see also, In re Parque Forestal, Inc., 949 F.2d 504, 509 (1st Cir. 1991).

Simply stated, if the determination of the controversy could have an effect on the bankruptcy estate, the controversy is a "related matter." 28 U.S.C.A. § 157(a).  Although disputed in CHARTIS' motion, BP's Notice of Removal is clear that the final adjudication of these lawsuits will be necessary for purposes of the CAPECO plan of reorganization. The distribution scheme of funds for

claims under the plan would come in large part from the final determination of the amounts owed. For these reasons, the Court finds that there exists a sufficient nexus between the determination of this controversy and the administration of the estate to find that this Court has jurisdiction over this matter.

**B. Core vs. Non-Core**

Once this Court's jurisdiction is established, the Court determines whether a civil proceeding is categorized as either a "core proceeding" or a "non-core proceeding." The Judicial Code differentiates between core proceedings and non-core proceedings and includes a non-exhaustive list of core proceedings. See, 28 U.S.C. § 157(b)(2). Section 157 does not provide the bankruptcy courts with the full authority over all matters as to which a district court may exercise jurisdiction under Section 1334. Pursuant to 28 U.S.C. §157(b)(1), a bankruptcy judge "may hear and determine all…core proceedings arising under title 11…and may enter appropriate orders and judgments, subject to review [under 28 U.S.C. § 158]." A core proceeding, for bankruptcy jurisdictional purposes, is an action that has as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment. If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding. In re Mec Steel Bldg., Inc., 136 B.R. 606, 609 (Bankr. D. Puerto Rico, 1992).

Pursuant to 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and determine core matters. In contrast, a bankruptcy court's power to hear and determine non-core matters is limited. Section 157(c)(1) provides that if a proceeding is non-core, but otherwise related to a case under Title 11, a bankruptcy court may hear the proceeding but may not enter a final order or judgment. Instead the

bankruptcy court submits proposed findings of fact and conclusions of law to the district court which, after consideration, enters a final order or judgment. However, the bankruptcy court may enter a final order or judgment with respect to a non-core, but related proceeding if all parties consent. See, 28 U.S.C. § 157(c)(2). Section 157(c) effectively creates three categories of proceedings: (1) a core proceeding, in which a bankruptcy court may hear the proceeding and make final determinations; (2) a non-core, related proceeding, in which a bankruptcy court may hear the proceeding, but cannot make final determinations absent consent; and (3) proceedings that are non-core and not "related to" a case under Title 11, wherein a bankruptcy court may not hear the proceeding.

The Supreme Court of the United States decided upon the power of bankruptcy judges to decide core and non-core proceedings in the seminal case of Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982). This case involved an adversary proceeding brought by a debtor-in-possession seeking damages for an alleged pre-petition breach of contract. The Supreme Court held that the proceeding could not be finally adjudicated by the bankruptcy court. The Court explained that while the restructuring of debtor-creditor relationships is at the core of the federal bankruptcy power, the adjudication of state-created private rights is not. Id. at 71.

The First Circuit defines non-core proceedings as "claims concerned only with state law issues that did not arise in the core bankruptcy function of adjudicating debtor-creditor rights, referring to them as 'Marathon-type suits.'" In re Arnold Print Works, Inc., 815 F.2d at 167 (quoting 130 Cong. Rec. H1848 (daily ed. March 21, 1984)(statement of Representative Kindness)). In this case, the court ruled that bankruptcy courts were empowered to finally determine suits filed by an estate representative to collect debts arising after the commencement of the bankruptcy case, but not

empowered to finally determine suits relating to debts arising before commencement of the case. In re Arnold Print Works, 815 F.2d at 168. While the former was deemed to be core, the latter was deemed non-core. Id. The court based its decision on Marathon stating that: "[n]on-core proceedings, those that the statute calls 'related to' bankruptcy cases, concern aspects of the bankruptcy case that Marathon barred non-Article III judges from determining on their own." Id. at 167.

The present adversary proceeding relates to a pre-petition action for damages that may be divided into three broad categories: (1) damages allegedly caused by the release of toxic pollutants into the environment; (2) damages allegedly caused by the physical manifestation of the explosion itself (i.e. the shock wave); and (3) alleged loss of use, loss of business and business interruption as a result of the dangers stemming from the explosion and the government's fire suppression efforts, and discomfort, material annoyance, loss of enjoyment, hurt and injury to the public, which allegedly precluded some businesses from operating. The claimed right of recovery for alleged damages stems from Commonwealth law. The causes of action asserted in the Commonwealth Court Action constitute a mass tort action premised entirely on Puerto Rico law. The Plaintiffs' action could survive outside of bankruptcy and in the absence of bankruptcy, could be resolved in local court. Plaintiffs' action relates to a pre-petition claim arising under local law which is deemed non-core under cited case law and specifically pursuant to the Supreme Court's decision in Marathon.

By definition, the Commonwealth Court Actions are non-core related proceedings because they existed prior to the filing of the bankruptcy petition. In re Mec Steel Bldgs., Inc., 136 B.R. 606 (Bankr. D.Puerto Rico 1992), a Chapter 11 debtor brought suit against a defendant to recover an alleged pre-petition debt, seeking a recovery of $15,500. The debtor argued that this involved administration of the estate and the turning over of property of the estate, both core proceedings

under 28 U.S.C. § 157(b)(2). The court in Mec Steel Bldgs. concluded that "actions initiated in the bankruptcy court to collect prepetition account receivables are clearly non-core matters and should not be considered as matters affecting the administration of the estate, or actions for the turnover of property of the estate in order to categorize them as core." In re Mec Steel Bldgs., 136 B.R. at 609. The Court went on to hold that: "[i]f an action survive[s] outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or district court, then it clearly involves non-core matter." Id.; C&A, S.E. v. Puerto Rico Solid Waste Management Authority, 369 B.R. 87 (Bankr. D.Puerto Rico 2008).  Applying the case law and statutes to the facts of the case before us, this Court concludes that this is a non-core proceeding "related to" a case under Title 11.  Pursuant to 11 U.S.C. § 157(c)(1) and (c)(2), this Court may only submit proposed findings of facts and conclusions of law. Any final judgment will be entered by the district judge, absent consent of all parties.

**III. ABSTENTION**

Our analysis now turns to whether this Court should consider abstaining from this proceeding altogether, even though jurisdiction has been established over the controversy. 28 U.S.C. § 1334(c) provides for two types of abstention, mandatory and discretionary (sometimes referred to as permissive). Mandatory abstention under section 1334(c)(2) provides that:

> "upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, "related to" a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction."

28 U.S.C. § 1334(c)(2).

Therefore, in order for mandatory abstention to apply, the proceeding must: 1) be based on a State law claim or cause of action, 2) lack a federal jurisdictional basis absent the bankruptcy, 3) be

commenced in a state forum of appropriate jurisdiction, 4) be capable of timely adjudication, and 5) be a non-core proceeding. 28 U.S.C. § 1334(c)(2).  "Pursuant to section 1334(c)(2), the 'district court must abstain from hearing a purely state law claim where there is no other basis for federal jurisdiction other than its relatedness to a bankruptcy proceeding (including one where the debtor is a party) and where the claim can be timely adjudicated in state court.'" In re Interamericas Turnkey Development Co., Inc., 94 B.R. 9, 13 (Bankr. D.Puerto Rico 1988), citing Matter of Candelero Sand & Gravel, 66 B.R. 903 (Bankr. D.Puerto Rico 1986) (quoting State Bank of Lombard v. Chart House, 46 B.R. 468, 472 (Bankr. N.D. Ill. 1985)); see also Goya Foods v. Unanue-Casal (In re Unanue-Casal), 164 B.R. 216, 222-23 (Bankr. D.Puerto Rico 1993)(discussing requirements for mandatory abstention), aff'd., 32 F.3d 561 (1st Cir. 1994), In re Punto Aparte, 2009 WL 249429 (Bankr. D.Puerto Rico 2009).  The language of the statute is clear that one of the prerequisites for mandatory abstention is that an action must have been initiated in a state forum with jurisdiction. See, Juan Flores Rivera v. Telemundo Group, 133 B.R. 674 (Bankr. D.Puerto Rico 1991); In re Mec Steel Bldgs., Inc., 136 B.R. at 610.  However, mandatory abstention cannot be applied in the case before us.  11 U.S.C. § 157(b)(4) states, "[n]on-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." 28 U.S.C. § 157(b)(4). In turn, section 28 U.S.C. § 157(b)(2)(B) which carves out an exception to 28 U.S.C. § 1334(c)(2), provides that:

> [c]ore proceedings include, but are not limited to allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 *but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11*. (emphasis added).

The claims against Defendants in this action involve the liquidation or estimation of unliquidated

personal tort claims against CAPECO's estate for purposes of distribution in CAPECO's bankruptcy case.

Even though mandatory abstention does not apply, section 1334(c)(1) provides for discretionary or permissive abstention. Section 1334(c)(1) states that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or 'related to' a case under title 11." Pursuant to this subsection, the Court may decline to review any matter if the principles of fairness or deference to state law justify such voluntary abstention. Matter of Candelero Sand & Gravel, 66 B.R. at 907.

However, discretionary abstention is not warranted despite the fact that State law issues are predominant when the applicable State law is neither unsettled nor difficult, or the matters involved do not have an impact on state policy. Telemundo, 133 B.R. at 675.  In the Commonwealth Court Action various factors add to the complexity of the case, including: the number of claimants and defendants; the nature of a mass tort action; the nature of the accidents; and the factual and legal issues regarding whether insurance coverage exists under the policies, one of which is an umbrella policy, specifically in light of the allegations of environmental pollution damages.  Coverage under these policies, if any, is subject to all the terms, conditions precedent, defenses, immunities, exclusions and warranties contained therein, as interpreted, construed and enforced by Commonwealth law. Novel issues of Commonwealth law can be anticipated.

In Telemundo, the District Court of Puerto Rico listed the factors to consider upon reaching a determination as to discretionary abstention:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over

bankruptcy issues, (3) the difficulty or unsettle nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other non bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted core proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy's court] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, and (12) the presence in the proceeding of non-debtor parties.

Telemundo, 133 B.R. at 677.

Not all of these factors are necessarily applicable, and the court also looks at comity as well as other equitable considerations. Berry, et. al. v. Pharmacia Corp., 316 B.R. 883 (Bankr. S.D. Miss. 2004). These Telemundo considerations heavily favor abstention. The Commonwealth Court retains a vested interest in seeing that its laws are enforced as intended. They have an interest in protecting and enforcing the rights and obligations of parties to insurance contracts that were entered into and are governed by Commonwealth law.  The above mentioned factors one, two, three, four, five, six, seven, eight, nine, ten, and twelve favor abstention. It is undisputed that the underlying personal-injury suit is governed exclusively by State law and trying the case in State court would have no impact on the restructuring. The parties agree that there is no jurisdictional basis for this suit to remain in federal court if not for the bankruptcy. The Defendants' desire to have the case tried in federal court is motivated, at least in part, by forum shopping. The right to a jury trial is inapplicable to the instance case since a right to a jury is not recognized in Commonwealth civil proceedings. With respect to comity, the Plaintiffs are all Puerto Rico residents, in fact there is an undisputed absence of diversity amongst the parties, and Puerto Rico certainly has an important interest in implementing its tort laws. Lastly, not all of the State court cases related to this disaster were

included in the BP Notice of Removal. Consequently, this may lead to inconsistent court rulings between the District Court and State court actions.

Applying these factors to the present case, it is clear that all can be satisfied and therefore, abstention is appropriate. As such, the Court concludes that remand is proper.

**IV. CONCLUSION**

Based upon the foregoing, the Court finds that permissive abstention from these lawsuits is justified by the cited statutes and case law. As per 28 U.S.C. § 1452(b), this Court remands these lawsuits to the Superior Court of the Commonwealth of Puerto Rico, Bayamon Part.

SO ORDERED.

San Juan, Puerto Rico, this 23 day of December, 2010.

Brian K. Tester
U.S. Bankruptcy Judge